## Marcum v. Commonwealth.

March 18, 1941.

T. H. Webb for appellant.

Hubert Meredith, Attorney General, and William F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The grand jury of Laurel county returned an indictment against Carter Marcum, Farmer Begley, and Everett Inman charging them with the crime of grand larceny. Inman entered a plea of guilty, and the jury fixed his punishment at confinement in the state penitentiary for a period of three years, but the circuit court postponed the entering of the judgment and placed Inman on probation. On his separate trial, Marcum was convicted and sentenced to three years' imprisonment in the state penitentiary. Inman testified for the Commonwealth, and on this appeal the sole ground urged for reversal of the judgment is that the testimony of Inman, an accomplice, is not corroborated by other evidence tending to connect appellant with the commission of the offense as required by Section 241 of the Criminal Code of Practice.

Marcum and his two codefendants were accused of stealing five cattle from Mrs. Amanda Prewitt, who resided on Johnson Ridge near Hazel Patch in Laurel county. Marcum lived at Pittsburg in Laurel county, and Begley and Inman lived at East Bernstadt about 2½ miles from Pittsburg. Marcum owned a truck, and both Begley and Inman had driven it, sometimes when employed by Marcum and sometimes when they had borrowed or leased the truck. Inman testified that Marcum planned the theft, and on June 13, 1939, Marcum, Begley, and Inman drove to Johnson Ridge in Marcum's truck where Begley and Inman remained with the understanding that Marcum would return for them about 9 o'clock that night. Begley and Inman, with ropes taken from the truck, caught and tied five cows belonging to Mrs. Prewitt, and when Marcum returned that night loaded them on the truck. Begley left the truck at East Bernstadt, and Marcum and Inman drove

to Louisville where they arrived at about 7 o'clock the following morning. The cattle were unloaded at the Bourbon Stock Yards and sold later in the day for $115. Marcum was given $15 for the use of the truck, and the remainder was divided equally among the three participants in the crime. Marcum and Inman returned to Laurel county the night of June 14, where they met Begley and gave him his share of the money. They learned that they had been suspected of the crime, and Marcum and Inman went immediately to Cincinnati, Ohio, where they were arrested about two weeks later.

Marcum denied that he had any connection with the crime, and testified that he left Pittsburg late in the afternoon of June 13 for Cincinnati, and before leaving loaned his truck to Inman for the purpose of hauling coal. He first learned of the theft of the cattle several days later when Inman met him in Cincinnati. Four witnesses who lived near the home of Amanda Prewitt testified that they saw Marcum's truck driven by Marcum on Johnson Ridge near the Prewitt home on June 13, the day the cattle were stolen. Some of them saw the truck traveling in the direction of the Prewitt home. They recognized Marcum as the driver, and saw one or more persons in the truck with him but were unable to identify them. Later they saw the truck returning toward Pittsburg, and Marcum was then alone. R. S. Collins testified that he sold five cattle for Everett Inman at the Bourbon Stock Yards in Louisville in June, 1939, for $115. It was learned later that the cattle had been stolen, and they were returned to Mrs. Prewitt. Collins dealt with Inman and did not remember seeing Marcum. Fred Maddox, an employee at the Bourbon Stock Yards, testified that he saw Marcum at the stock yards about June 13, 1939, with some cattle. Another man was with him.

There was ample evidence tending to connect Marcum with the commission of the crime aside from the testimony of the accomplice. Corroboration of the testimony of an accomplice is required because of the questionable character of such testimony, since it may be influenced by promise of immunity or by hope of reward, benefit or advantage for the witness. Standing alone, such testimony cannot be considered by the jury, but when corroborated by testimony connecting, or tending to connect, the accused with the commission of the of-

fense with which he is charged, the jury may convict although the corroborating testimony alone is not sufficient to sustain a conviction. Williams v. Commonwealth, 257 Ky. 175, 77 S. W. (2d) 609. In the present case the evidence, with the testimony of the accomplice eliminated, was sufficient to take the case to the jury and to sustain a verdict of guilty.

The judgment is affirmed.